```
              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ALABAMA
                   SOUTHERN DIVISION
```

ANTHONY WALTER,                }
                               }
     Plaintiff,                }
                               }    CIVIL ACTION NO.
vs.                            }
                               }    CV-96-AR-2072-S
CENTURY PLAZA COMPANY,         }
                               }
     Defendant.                }

**MEMORANDUM OPINION**

The court has before it the motion of defendant, Century Plaza Company ("Century Plaza"), for summary judgment in the above-styled cause. Plaintiff, Anthony Walter ("Walter"), a former Century Plaza employee, alleges that Century Plaza violated the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), by discharging him in a racially discriminatory manner. Finding no genuine issue of material fact with respect to Walter's claim of discriminatory discharge, this court concludes that Century Plaza is entitled to judgment as a matter of law.

### I. *Pertinent Undisputed Facts*

Century Plaza operates a large shopping mall in Birmingham, Alabama. Walter, a black male, began working for Century Plaza as a security officer on January 11, 1994. Pl. Exh. 7. In this position, Walter was assigned to "nonspecific" duty. Security

officers who are assigned to nonspecific duty rotate through varying patrol assignments.  Primarily, Walter's patrol assignments included the mall, the patrol vehicle, and the upper level employee parking lot — also known as the "tower." Throughout Walter's employment, the person responsible for his patrol assignments was Sgt. Richard Chambers ("Sgt. Chambers"), his immediate supervisor.  During this same period, Sgt. Chamber's immediate supervisor was Century Plaza's chief of security, Don Boner ("Chief Boner").

Century Plaza's attendance policy requires that, when an employee is going to be tardy or absent, he must notify his supervisor of this fact either (1) two days in advance; or (2) no later than one hour after he is scheduled to report to work.  Pl. Exh. 10.  If an employee fails to do so, then Century Plaza considers the tardiness or absence "unexcused."  Under the company's policy, unexcused tardiness and/or absences are a ground for termination.  Id.  Within two months of coming to work for Century Plaza, Walter began to have a problem with unexcused tardiness and absences.  According to Century Plaza, it warned Walter about his unexcused tardiness and absences in writing on at least five separate occasions, including his 90-day performance review, a written warning issued on April 15, 1994, his 180-day performance review, a second written warning issued

2

on July 16, 1994, and his one-year performance review. Pl. Exh. 7 at 2. Walter acknowledges receiving the April 15, 1994, and July 16, 1994, warnings. Pl. Brf. at 2.

In May, 1995, Walter was diagnosed with diabetes. This condition made it inadvisable for him to work in extreme heat for prolonged periods. Pl. Exh. 9. Soon after receiving this diagnosis, Walter informed Century Plaza of his condition and the limitation it imposed. Nevertheless, Walter continued to receive patrol assignments for the tower, which is not air-conditioned. Because of his condition, Walter asked to be reassigned to work in either the air-conditioned mall or patrol vehicle. After some initial disagreement, the parties eventually reached an accommodation which provided that, whenever Walter was assigned to the tower, he would receive relief duty in an air-conditioned environment every two hours or sooner upon request. Pl. Exh. 7 at 1-2; Boner Depo. at 46-48.

On August 15, 1995, while Walter was patrolling the tower, he collapsed from heat exhaustion. Walter Depo. at 202-04. Despite the hot weather on that day, Walter made no request for relief from the tower prior to his collapse. Id. Following his collapse, Walter was absent for the remainder of August 15, 1995, and for all of August 16, 1995. However, on August 16, 1994, Walter did file a discrimination charge with the Equal Employment

Opportunity Commission ("EEOC"). Pl. Exh. 8. In his EEOC charge, Walter accused Century Plaza of both failing to accommodate his disability and race discrimination. Walter returned to work on August 18, 1995.[1] He was absent again on August 19 and 20, 1995.

On August 21, 1995, Century Plaza discharged Walter for excessive unexcused absenteeism. According to Chief Boner, the decision to discharge Walter was based, in part, on Walter's apparent failure to inform his supervisor, Sgt. Chambers, that he was going to be absent on August 19 and 20, 1995.[2] Boner Depo. at 63-65. On August, 22, 1995, Walter amended his EEOC charge to include a claim for retaliation. Although the EEOC issued Walter a right-to-sue letter, he failed to bring a lawsuit on any claims he may have had under the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), or the American with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), within the 90-day time frame prescribed by those statutes. Rather, Walter filed this lawsuit on August 9, 1996, and alleged only violations of § 1981.

---

[1]  Walter was not scheduled to work on August 17, 1994. Walter Depo. 219-21.

[2]  Although Walter denies that he failed to report his August 19 and 20, 1995, absences to his supervisor, he does concede that, as of August 18, 1995, he had accumulated 104.75 hours — or almost three weeks worth — of unexcused absences for that year. Pl. Exh. 7 at 2; Pl. Brf. at 2, 11.

4

On September 25, 1995, hired Thomas Brooks ("Brooks"), a black male. Brooks was the first person hired as a security officer after Walter's discharge. On September 27, 1995, Century Plaza hired another security officer, Jeff Camper ("Camper"), a white male.

## II. *Summary Judgment Standard*

In pertinent part, Fed.R.Civ.P. 56 provides that:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The Eleventh Circuit also has observed that "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994). Century Plaza has invoked Rule 56.

## III. *Discussion*

Walter's only claim is one for discriminatory discharge in violation of § 1981. In support of this claim, Walter offers what he asserts is both direct and circumstantial evidence of race discrimination by Century Plaza. The court will address each of these assertions in turn.

### A. Walter's Direct Evidence of Discrimination.

Walter's purported direct evidence of race discrimination consists of two incidents in which Sgt. Chambers and Paul Reynolds ("Reynolds"), a white security officer, allegedly used racial slurs. Century Plaza contends that, even if the statements attributed to Chambers and Reynolds were made, they do not constitute direct evidence of discrimination by Century Plaza. Century Plaza is correct.

This court recently observed:

> "Direct evidence of discrimination would be evidence, which, if believed, would prove the existence of a fact without inference or presumption." (Citation omitted). Direct evidence often takes the form of remarks made by employers that reveal discriminatory attitudes and that are related to the challenged employment decision. (Citations omitted). However, not every remark in the workplace constitutes direct evidence of discrimination.

Allen v. City of Athens, 937 F. Supp. 1531, 1538 (N.D. Ala. 1996). In fact, "direct evidence of discrimination is rare indeed." Id. at 1542. This observation flows from the court's recognition that the Eleventh Circuit takes a very narrow view of what constitutes direct evidence of discrimination. Id. According to the Eleventh Circuit, in order "[f]or statements of discriminatory intent to constitute direct evidence of discrimination, they must be made by a person involved in the challenged [employment] decision." Trotter v. Board of Trustees of the University of Alabama, 91 F.3d 1449, 1453 (11th Cir.

1996).

In the instant case, Walter concedes that neither Chambers nor Reynolds played a role in the decision to discharge him.[3] Id. at 247-48. In fact, the record reveals that it was Chief Boner who made the decision to discharge Walter. Walter Depo. at 248; Boner Depo. at 58. Walter does not allege that Boner ever used racial slurs. Walter Depo. at 245. Therefore, in light of this last fact and Walter's concession, the court concludes that Walter has failed to produce any direct evidence of race discrimination by Century Plaza as defined by the Eleventh Circuit.

### B. Walter's Circumstantial Evidence of Discrimination.

To establish a *prima facie* case for discriminatory discharge using circumstantial evidence, Walter must demonstrate: (1) that he is a member of a class protected by § 1981; (2) that he was qualified for his position; (3) that he was discharged despite

---

[3] Walter submitted an affidavit in opposition to Century Plaza's motion for summary judgment which states "it was Mr. Chambers who told Mr. Boner that I had not called into work on August 18, 1995, which precipitated my firing." Pl. Exh. 1 at 2. This affidavit contradicts his deposition testimony in which he admits that he does not have any evidence that Chambers participated in the decision to discharge him. Walter Depo. at 248. In Van T. Junkins & Assocs., Inc. v. U.S. Industries, Inc., 736 F.2d 656, 656 (11th Cir. 1984), the Eleventh Circuit held that "a district court may find an affidavit which contradicts testimony on deposition a sham when the party merely contradicts its prior testimony without giving any valid explanation." In the instant case, Walter offers no explanation for the contradiction between his deposition testimony and affidavit. Using the prerogative granted by the Eleventh Circuit, this court finds that Walter's affidavit is a sham, and it will not consider the affidavit as evidence on this point.

his qualifications; and (4) that Century Plaza replaced him with someone from outside his protected class.[4] *See* <u>Edwards v. Wallace Community College</u>, 49 F.3d 1517, 1521 (11th Cir. 1995) (articulating *prima facie* case for discriminatory discharge). Century Plaza argues that Walter cannot satisfy the fourth element of his *prima facie* case because Brooks — the first security officer hired after his discharge — also was a black male. Walter responds by arguing that, because Brooks worked "bike patrol" in addition to nonspecific duty, Brooks cannot have replaced him. Bike patrol requires special training, and security officers who do not have this training perform only nonspecific duty. Walter and Camper - the white security officer hired immediately after Brooks — did not have bike patrol training. According to Walter, because Brooks had special training and patrol assignments that he and Camper did not have, he was replaced by Camper instead.[5]

---

[4] The *prima facie* case under § 1981 and Title VII is essentially the same. *See* <u>Grooms v. Wiregrass Elec. Co-op., Inc.</u>, 883 F. Supp. 643, 647 n.3 (M.D. Ala. 1993) (explaining that "the legal elements of § 1981 and Title VII claim predicated on disparate treatment are identical") (citing <u>Stallworth v. Shuler</u>, 777 F.2d 1431, 1433 (11th Cir. 1985)).

[5] The record is unclear as to whether Brooks received his bike patrol training before or after he came to work for Century Plaza. Obviously, if Brooks did not receive the training until after the company hired him, then he and Camper shared the same initial qualifications, and Walter's argument is without merit. However, in order to view the evidence in the light most favorable to Walter, the court will assume for purposes of this opinion that Brooks received his bike patrol training before coming to work for Century Plaza.

"The standards for determining who actually replaced the discharged employee for purposes of the *prima face* case of discrimination are not well developed." Hawkins v. CECO Corp., 883 F.2d 977, 982 (11th Cir. 1989). Nevertheless, the Eleventh Circuit has observed that:

> An employee's position and responsibilities are relevant to determining his or her replacement. Where the employee's position is clearly delineated and responsibilities are well defined, the court should focus on the person that physically replaced the employee or consider whether that job title was actually filled.
>
> * * *
>
> When the employee's position requires . . . little skills or training, it is appropriate to determine who filled the vacancy created by the plaintiff's discharge or who was the next person hired at that skill level. Replacement by a nonminority is the fourth element of a *prima facie* case because it is evidence of preferential treatment of nonminorities in the work place. Where the worker assumed no additional benefits by performing the discharged employee's duties, there is no indication of preferential treatment. <u>If an employer uses positions in a job category interchangeably, it can be assumed to hire interchangeably as well. Because . . . the benefits and pay are equal for each position in the category, a new employee fills a vacancy in the work force and replaces the discharged employee even if he does not perform the exact same responsibilities of the former employee</u>.

Id. at 982-83 (emphasis supplied). In light of this authority, Walter's argument on this point is not well taken.

The record indicates that Century Plaza hired Brooks and Camper for the same position — "security officer." Pl. Exh. 11. It also indicates that Brooks and Camper received the same initial wage — $5.75/hour. Id. These facts confirm, or at least

9

strongly suggest, that, as far as Century Plaza was concerned, Brooks and Camper occupied the same position and skill level. Therefore, as the authority cited above explains, the mere fact that Brooks had training that allowed him to go on to assume responsibilities that Walter never had does not, as Walter suggests, necessarily preclude Brooks as his replacement for purposes of the *prima facie* case. Although the result might be different if Brooks had been assigned exclusively to bike patrol, that is not the case here. In fact, the record reveals that, despite his additional training, Brooks spent two-thirds of his time assigned to the same sort of nonspecific duty that Walter had done. Consequently, the court concludes that Brooks replaced Walter and that Walter has failed to satisfy the fourth element of his *prima facie* case. Were the court to conclude otherwise in this case, it would advance the untenable proposition that employers risk violating § 1981 every time they replace a discharged person with someone possessed of greater ambition than his predecessor.

Nevertheless, as Walter correctly observes, "a prima facie case is not wholly dependent upon meeting the fourth requirement of the McDonnell Douglas test." Edwards, 49 F.3d at 1521. In fact, [a] plaintiff may have a prima facie case based on the first three requirements despite the fact that the employer hired

10

a minority to fill the vacancy left by the plaintiff." Id. According to the Eleventh Circuit, in order to determine whether a plaintiff employee is able to do so:

> the court must consider whether the fact that a minority was hired overcomes the inference of discrimination otherwise presented by the plaintiff. Courts considering such a situation have looked at several factors including the length of time between the discharge and the replacement, whether the replacement by the hired minority occurred after the filing of an E.E.O.C. complaint, and, if the person hired had a history with the employer, whether it was positive or negative.

Id.

When these factors are applied to the facts of this case, it becomes clear that Century Plaza's decision to hire Brooks was not a pretext for race discrimination. First, Century Plaza hired Brooks approximately one month after Walter's discharge. Second, nothing in the record indicates that Brooks had any employment history, either positive or negative, with Century Plaza. Finally, although Walter did file an EEOC charge prior to the time that Century Plaza hired Brooks, nothing in the record suggests that the company did so as a response to the charge. Therefore, the court concludes that Walter has failed to make out a *prima facie* case of discriminatory discharge thereby entitling Century Plaza to judgment as a matter of law.

11

### IV. *Conclusion*

The court will enter a separate and appropriate order in accordance with this memorandum opinion.

DONE this 10th day of November, 1997.

                                                /s/ William M. Acker, Jr.
                                                WILLIAM M. ACKER, JR.
                                                UNITED STATES DISTRICT JUDGE